## Carmichael, Appellant, *v.* Trustees of School Lands.

Where a plat and certificate of survey were admitted in evidence to the jury, when it did not appear that there was any question of boundary under the statute, or other proceeding to which it could properly refer: *Held*, the admission of the paper in evidence was irregular. Where the plat or survey was embraced in the bill of exceptions, they were held to be the same offered in evidence, although wanting proper words of designation and identity.

Where a corporation sues, they must prove, under the general issue, that they are a corporation.

The trustees of school lands, although not incorporated by a particular name, are, nevertheless, *quasi* corporations, and must prove under the general issue their authority to sue. Like all other corporations, they possess only such powers as are given them by law, and must be subject to the rules governing corporations.

The right of the trustees of school lands to sue cannot be denied by plea in abatement, as it would be equivalent to *nul tiel* corporation, which is now considered bad, because it amounts to the general issue.

Where the court gave twenty days to execute an appeal bond, but the party executed it two days after it was granted, during the session of the court, and the surety was approved by the court, and it appeared in the record as a part of the proceedings: *Held*, the appeal must be sustained.

APPEAL from the circuit court of Wilkinson county.

This was an action of trespass *quare clausum fregit*, brought by the trustees of school lands, section 16, in township No. 1, range 4, against Carmichael, for two hundred cypress trees cut and carried away from the school lands by the slaves of the defendant below.

There were two counts in the declaration, one at common law, *de bonis asportatis*, and the other upon the statute of June, 1832, for the forfeiture of 10 dollars for each tree cut and carried away.

The plea was not guilty and issue thereon. Verdict of guilty and damages assessed to 1000 dollars.

On the trial, the plaintiffs offered in evidence a plat and survey

[Carmichael, Appellant, *v.* Trustees of School Lands.]

and certificate thereto of one George Dougherty, which was objected to on the part of the defendant, on the ground that it was not taken in obedience to any regular authority, but appeared to be mere private property; which objection was overruled and the plat admitted in evidence to the jury.

The defendant asked the court to instruct the jury, that the trustees must prove their authority to sue, which instruction the court refused.    Bills of exceptions were taken to the opinions of the court.

It also appeared that the appeal was granted, the bond to be entered into twenty days after the adjournment of the court; but the bond was executed two days after the appeal was taken and the surety approved by the court.

Winchester, for the appellant.

1. The plat and certificate thereto, of George Dougherty, given in evidence as a survey, and excepted to by the defendant, was inadmissible.    It was a mere private plat made by Dougherty, or purporting to be made by him, although, for any evidence to the contrary, it might never have been made by him, or if made by him, it may be a mere sketch of fancy.

A survey to which defendants are not parties is not evidence. 1 Strange 95; 1 Lord Raym. 731.

2. The court erred in refusing to charge the jury, that plaintiffs must prove their authority to sue as trustees of school lands in township No. 1. range 5, and in charging the jury, that the pleadings admitted the plaintiffs to be the trustees authorised by the act of 15th December, 1830, to sue.    8 Johns. Rep. 378; 14 Johns. Rep. 415.

The declaration avers, that Noland and others were in the possession and charge of the land from which the trees were cut and carried away, by virtue of their office as trustees of school lands in township No. 1, range 5.

This was a material averment, as, unless plaintiffs were in possession, either actual or constructive, there could be no trespass. The plea of not guilty means, not guilty of the trespass charged in the declaration, which is a denial of every material fact, which goes to constitute the charge of trespass.    Actual force is of the

[Carmichael, Appellant, v. Trustees of School Lands.]

very essence of a trespass *vi et armis*. Where the plaintiffs do not prove themselves to be in the actual possession of the land, there can be no trespass, in carrying away trees, for which they could sue. But at the least there must be a constructive possession. Until the plaintiffs proved themselves the trustees of school section in range 4, they failed to prove themselves in the constructive charge and possession of the school section in range 5.

None of Mr. Henderson's authorities reach to a case of this kind.

Suppose a plaintiff were to aver that he was in possession as a lessee by virtue of a lease; and being so in possession the defendant with force and arms trespassed upon his possession, by cutting and carrying away his crop of grain? He would have to prove his lease, and not guilty would not admit it. Suppose he averred he was in possession as heir by descent? He would have to prove his title by descent. It is not a question of the character in which the parties sue, but of the title by virtue of which they claim to be constructively in possession. It is the very gist of the plaintiffs' action.

It was, therefore, undoubtedly error in the court to charge the jury, that the pleadings admitted the plaintiffs to be the trustees authorised, by the act of 15th December, 1830, to sue.

Not guilty means, that defendants are not guilty with force and arms of trespassing upon lands in the possession of plaintiffs by virtue of their right to the possession as trustees, in manner and form as plaintiffs have alleged, and cutting and carrying away two hundred cypress trees. It is, therefore, not a question of the character in which they sue, but of the title under and by virtue of which they aver themselves to be in the constructive possession of the land and timber.

The act requiring a plea denying the character on oath, upon which Mr. Henderson relies, was passed in 1836. The exceptions were taken on the trial in October, 1834. An erroneous decision of the court in 1834, cannot be made a correct decision by an act of the legislature of 1836, even " by being perverted in the metaphysics of speculation." If it could, attorneys have only to obtain seats in the legislature, to gain a bad cause in the revisory courts. " Plaintiff must prove that he had either the

[Carmichael, Appellant, *v.* Trustees of School Lands.]

constructive or actual possession at the time of the trespass committed." Saunders on Pleading, 861.

3. Court erred in refusing to charge the jury that, if Davis wilfully committed the trespass without the assent and direction of Carmichael, Carmichael is not guilty of the trespass, and in charging the jury, that although Carmichael was not answerable for the trespasses of Davis, he was answerable for the trespasses of his own slaves, though under the direction of Davis as overseer.

Admit that a master is answerable for a trespass committed by his slaves, to the same extent that he is for trespasses committed by his cattle, yet he cannot be liable for a trespass committed by his overseer with his slaves while under the overseer's control, when such trespass is committed without the assent and direction of the master.

If the overseer took the cattle of such master, and drove them through the cotton field of a neighbor, breaking down and destroying his fences, corn and cotton, without the knowledge, consent or privity of the owner, such owner could not be made liable because the trespass was committed by his overseer with his cattle.

" It must be shown that the defendant or his servant by his command committed the trespass." Saunders on Plead. and Ev. 863.

4. The court erred, in refusing to charge the jury generally, that they must find for the defendant, the plaintiff having misconceived his action. 1. An action of trespass for taking and carrying away trees will not lie, unless there is a constructive or an actual possession in the plaintiff. Actual force is necessary, as well as immediate injury. 2 Saunders, 863. 2. An action of trespass *vi et armis* will not lie for a forfeiture under the statute. 2 Saund. on Plead. and Ev. 853, 863; 3 East, 602; 5 Term Rep. 649; action on statutes is, 2 Saund. Plead. and Ev. 829, debt on case.

5. The court erred in refusing to charge the jury, that the damages laid down in the Revised Code, is not the rule of damages in this case. As only debt or case will lie on a statute, it follows that the statutory damages is not the rule, but the common law rule of damages, to wit, the real amount of damages proved. Wherever case will lie, trespass will not, unless where

there is both an immediate and a consequential injury, although, in some cases, where trespass will lie, case will also, as where plaintiff can waive the trespass.

6. The court erred in refusing to grant a new trial.

There was no evidence of actual force before the jury, and the court erred in refusing to charge the jury, that upon the evidence they ought to find for the defendant, as well as in the other charges it gave or refused to give. The damages also were excessive. The largest number of trees which plaintiffs' witnesses guessed were cut down, was 80 or 90, and the damages are a thousand dollars. The overseer swears positively but two were cut. The plaintiffs' witnesses were themselves trespassers, and undoubtedly swore to the full extent of a willing conscience. The verdict then, could not, upon the evidence, exceed 800 or 900 dollars.

The verdict, therefore, was upon insufficient evidence, on erroneous charges of the court, and excessive, and a new trial ought to have been granted.

Henderson, for the appellees.

The first exception found in the record, is made by the defendant below, to the admission in evidence of the plat and survey made of the premises, on which the trespass is charged to have been committed. It is not excepted to on any specific ground; and all the strength of the objection must, therefore, consist in its applicability and pertinency as testimony to the issue joined. The necessity of a survey, showing the lines and boundaries of wild lands, or open woodlands, in connection with the title, to recover for trespass thereon, is as well established as in actions of ejectment; and it is presumed unnecessary to refer to any authority in support of so obvious a principle.

, The next exception, in order of time, is found in the charges and instruction to the jury, prepared by the defendant, and which the court below refused to give, or gave with qualifications. The defendant requested the court to charge the jury,

1. " That the plaintiffs must prove they have authority to sue in the capacity of trustees of school lands, &c., and that the act of the legislature of the 15th of December, is not evidence of that fact."

[Carmichael, Appellant, *v.* Trustees of School Lands.]

What fact? I would ask. The fact of their "authority" to "sue in the capacity of trustees," &c. Now this exception does not put in question the plaintiffs' capacity as trustees, &c., but only their authority to bring this suit in that capacity. Now the truth is, the statute of the 15th of December, 1830, does expressly give this authority to sue in the capacity in which the plaintiffs have sued, viz: the trustees of school section of township 1, range 4, suing for injuries to school section in township 1, range 5. 1 Chit. Plead. 186. The refusal of the court to give this instruction was, therefore, right. But the court proceeded further to say "that the pleadings admitted the plaintiffs to be the trustees authorised by the act to sue." In other words, the court charged that the capacity of the plaintiffs as trustees, &c., was admitted by the defendant's plea to the action of not guilty. In other words, to have put the plaintiffs' capacity in issue, a plea appropriate to that purpose should have been filed by the defendant. This charge, we contend, was right, and in conformity with the decision of the Supreme Court of the United States, in an action of trespass, by persons suing as corporators, and where the defendant had pleaded not guilty. 1 Peters's Rep. 450; 8 East, 404–5; Stevens's Plead. 255–6. As to statutory trustees' right of suit, 1 Chit. Plead. 15, 16. In actions *ex delicto,* exceptions against plaintiffs as parties, must be by plea in abatement. 1 Chit. Plead. 76, 483. As to the plea to the count or action, admitting the character of the plaintiff, 1 Chit. Plead. 475. That this is specially the case of plaintiffs suing in *autre droit,* 1 Chit. Plead. 487, 525, and *n.*; 2 Dall. 100; 3 Doug. 303.

This rule, as decided in 1 Peters, we insist was always the law when the rule was rightly understood; but as settling all doubt on the subject, the statute of 1836, p. 63, sect. 4, has enacted, "That all pleas to the action shall be deemed and adjudged as admitting the parties, and the character of the parties suing;" and as the statute only goes to operate on the remedy, and not the private and vested rights of persons, it becomes the rule of decision in this case, though enacted subsequent to the institution of this suit. On this point, see 4 Wheat. 244; 4 Cowen, 392; 16 Mass. Rep. 245.

2. The second charge asked for by the defendant below, was

8*

given substantially as asked for. But the judge added to his charge on this point, that the defendant " was answerable for the trespass of his own slaves, though under the direction of Davis as overseer."

I am unable to perceive the slightest objection to the legal correctness of the language of the court last quoted; and to my apprehension, it involves none of the unreasonable results supposed by this court, in their former examination of this case.

It does not intimate that defendant was liable for the trespass of Davis, under any circumstances. It does not impute liability to defendant for the trespass of his own slaves, if Davis, as a *tort feasor*, commanded and directed the slaves to the commission of such trespass wilfully. But according to its fair construction, implies only, that Carmichael is liable for his slaves' trespasses, though he might have had an overseer in charge of his slaves; and in its most extended construction, can only mean that if the defendant's slaves committed the trespass by the direction of Davis, as the defendant's agent in the ordinary performance of his duties as an overseer of defendant's plantation and slaves, then the defendant was liable for such trespass. Now if this construction be ascribed to the language of the charge, it would be exactly within the rule of law, as applied to trespasses in England, and the non-slaveholding states, committed by white laborers and servants under the direction of a steward or agent, acting in the ordinary performance of the duties assigned him. 1 Chit. Plead. 93.

Had the court below charged the jury, the defendant was liable for these trespasses of his slaves, which the overseer, departing from the business of his employer, wilfully directed them to commit; then the charge would have been erroneous, and the case would have presented, in the judge's charge, those oppressive and unreasonable features, which this court, in its former opinion, had imagined to belong to it.

But when scrutinised, the charge referred to is believed to be fully within the rule of law even applicable to white free servants. 1 Chit. Plead. 92; 2 Call. Rep. 231 or 274. And the knowledge of the principal in respect to such trespass—or the interest which he derived—or whether it was committed by his

[Carmichael, Appellant, *v.* Trustees of School Lands.]

approbation or assent, are immaterial inquiries, provided that the trespass was committed by the "negligence or unskilfulness of his servant or agent in the course of his employ." 1 Chit. Plead. 92, 93; 4 Campbell, 72.

The charge, in its utmost latitude, cannot be extended so far, but this rule of law will amply cover it, even were the defendant's servants white free men, instead of slaves. We think, therefore, this charge of error is not sustained even by the English common law rule.

We believe, however, there must be a wide distinction founded in the nature of our institutions, as to the liability of a master for the trespasses of his slaves in this state, and the liability of an employer for the trespasses of his free laborers, in England or New York. In the latter instances, the employer is responsible as a principal for those trespasses committed by his laborers, hirelings, agents or sub-agents in the ordinary course of his employ. Now if his employ was that of cutting timber, to build his gins, houses and fences; and his directions to his laborers, were to cut the timber only from the forests of the employer; and if the employer, though frequently visiting the ground where the timber was being delivered by his own teams, and daily appropriated to his own use, should never trouble himself to show his laborers the boundaries of his forest lands; and through their ignorance of these boundaries, or their negligence in tracing out the lines, they should cut over on the adjoining lands of another, is there any common law lawyer who would doubt, but the employer in England or New York, under such circumstances, would be liable for the trespass.

But the decisions in these countries proceed to say, that if these laborers, agents or servants, without the assent of the employer, "wilfully" commit a trespass, though at the time engaged in the business of their employer, in such case the employer is not liable for the trespass, but the servant only. Because, say the books, in such case the servant has departed from his master's employ.

Now it must be obvious that this latter rule cannot be applied in its reasons or consequences, to the wilful trespass of a slave. 1. Because in legal contemplation, a slave cannot depart of his

[Carmichael, Appellant, *v.* Trustees of School Lands.]

own will, from the service, possession or employment of his master; and 2. Because the slave cannot be made liable for any trespass.

A slave has no will, as recognised by our law, in respect to civil rights and liabilities. Yet he is a being, who can, in fact, will and perpetrate all kinds of torts and malicious mischief. But who shall be responsible, *civiliter*, for his acts in these respects? I entertain no doubt the master is responsible. And by the master, I mean him who is entitled, or assumes to control the services of the slave for the time being. Such master, for all civil responsibilities, must be considered to will for the slave. Because the law not only concedes him the right, but imposes on him the duty, to will the slave's control, and protect others from his wrongs and violence.

To pursue this contrast in another particular. By the common law, (where slavery is not recognised,) it is a general rule that the agent, manager or overseer, is not liable for the damage done by the negligence of those employed by him in the service of his principal. And it was decided by Lord Kenyon, that " the action must in these cases be brought against the hand committing the injury, or against the owner for whom the act was done." 1 Chit. Plead. 97.

But in this state, and under our laws, if the hand committing the injury be that of a slave, no redress can be had against him; and according to the English common law rule, if this hand did the wrong " wilfully," and without the assent of the employer, the principal, or master, would not be liable. *Ergo,* The citizen of Mississippi would be without redress, where the common law afforded relief, and provided protection for the Englishman.

The statute, Rev. Code, p. 381–2, sect. 56 and 57, seems also to my mind an exposition of what our legislature have considered the liability of the master for the trespasses of his slave. By that statute, if the slave commit his trespass in such manner that it would be a felony at common law, the master, in such cases, is held liable for the damages.

It would be difficult to assign a reason why he should be held responsible for the damages resulting from the more flagrant and criminal outrage of his slave, and yet not liable for those

[Carmichael, Appellant, *v.* Trustees of School Lands.]

damages resulting from the lesser violence and wickedness of the slave. Shall he be bound at the peril of his purse, to restrain the slave in his greater enormities, but not liable for his lesser trespasses? If my neighbor's slaves cut my corn from the field, I have no redress; if taken from my crib clandestinely, the master is liable. And yet, infants, idiots and lunatics are liable in trespass. 3 Com. Dig. 586; 4 Mass. Rep. 376; 1 Chit. Plead. 51; 3 Bac. Abr. 536; 6 Bac. Abr. 589; 2 East, 104; 1 Chit. Plead. 52.

I do not believe such is the result of our system.

At common law, the husband is liable for the torts of his wife. 10 Johns. Rep. 247; 1 Chit. Plead. 105, 106; 2 Com. Dig. tit. Baron and Feme, letter Y, p. 251. Now the liability, *civiliter*, of the husband with his wife, for her torts, though committed *animo furandi*, can only be placed on the ground that, being charged by the law with the control of her will and actions, he is made responsible therefor. In other words, her actions resulting from a tortious will, are, for purposes of civil compensation, imputed to him, because the government of her will and action is committed to his control.

The third and fourth instructions asked for by the defendant below, do not deserve the slightest notice. But in respect for the counsel who advocate them, I respond; and first, to the third ground;

That the court should have charged, " that they must find for the defendant, the plaintiff having misconceived his action."

Such could not have been the duty of the court below, unless upon facts ascertained, on which the authority of the court so to instruct could be based. In the condition in which the case was then before the court, there were no other ascertained facts, than the pleadings in the cause, on which the court could not rest their decision that the action was, or was not misconceived. If the pleadings show the action to be misconceived, in this state it can only be taken advantage of by demurrer; 1 Chit. Plead. 226–7; Stevens's Pleading, 181, 182; in connection with statute, Rev. Code, p. 124, sect. 91; which provides that " no judgment, after the verdict of twelve men, shall be stayed, or reversed, for any mispleading;" or for any mistake or misconception of the form of

action, or for any other defect in the pleadings of form or substance, which might have been taken advantage of on demurrer, &c., &c.

Now, but for this statute, besides the objection by demurrer, the error could be reached by a motion in arrest, or on writ of error. But it could not be made available by way of nonsuit; 3 Johns Rep. 430; 1 Chit. Plead. 227; and the objection could not be made on motion for a new trial. 3 Johns. Rep. 105; 5 Conn. Rep. 114.

When the misconception of action appears only by the evidence on trial, it is then made available as a ground of nonsuit, on which the court might be called on to instruct, in connection with the evidence, but cannot so judge of the evidence as to give a peremptory order for a verdict. 1 Serg. & Rawle, 360; 4 Johns. Rep. 402.

The court, therefore, was right in refusing the third instruction asked for.

The fourth instruction asked for, is similar in the illegality of its pretensions. The second count in the plaintiffs' declaration is a special count upon the statute in the Rev. Code, of 15 June, 1822, and avers the measure of the plaintiffs' damages as provided for by that statute. No exception being taken by the plea of the defendant to the form of the count, the court could not correct the error, if such existed, by a peremptory order to the jury.

It is one of the first, and most simple rules of law, that the plaintiff not only may prove his averments on which the defendant has joined issue to the country, but he must prove all that are substantial. 5 Amer. Dig. 394, sect. 5.

If the form of the action was wrong, this was not the proper mode for its correction, and it is useless to discuss how the question, attempted to be thus raised, might have been presented, as the record shows no ground on which the question could be revised even if the error existed, which we deny, either upon the face of, or *dehors* the record.

The last point, or bill of exception, which complains of the court because they refused to correct the form of action by granting a new trial, is rather too much out of character, to demand further notice than to show its unimportance had not escaped my notice.

[Carmichael, Appellant, *v.* Trustees of School Lands.]

The last question is that of the defendant's application for a new trial. We insist it should not be granted, and the court below were right in refusing it,

1. Because there is no distinct motion in the record assigning any cause or causes for a new trial, in the overruling of which the court could have erred.   5 Amer. Dig. p. 396, sect. 26.

2. This court should not order a new trial on the statement of testimony incorporated in the bill of exceptions, as now on record, because it appears from the same bill of exceptions that the plaintiffs below read the depositions of four several witnesses, viz: the deposition of Thomas Porter, Paraly Fogle, John D. Washburn, and Joshua Scurlock, whose testimony is not incorporated in the bill of exceptions, or otherwise before this court. And, therefore, this court should not convict the court below of error, unless the facts, on which the decision below overruling the application for a new trial was made, were now before this court.

3. Even without the presence of the four depositions aforesaid in behalf of the plaintiff below, there is sufficient testimony in favor of the plaintiff's right of recovery, and the measure of his damages, to show the verdict, being a second verdict, ought not to be disturbed.

The conflict of testimony between the witness Scarborough, for the plaintiff, and the witness Davis, for the defendant, as exhibited of record, is wide, and obviously apparent.   On this state of conflicting testimony the jury have twice decided for the plaintiffs. As it is their peculiar province to decide on doubtful and conflicting testimony, this court should not now interpose its opinion on the weight of testimony, adverse .to the two verdicts heretofore had in the cause.   But to review the evidence.

If there were any trees cut on the school lands by defendant's slaves, it is certain, from the evidence, that the timber went to the plantation and use of the defendant.   And though it is not shown the defendant was cognizant to the fact, or assented to the trespass, yet, all the proof shows he got the benefit of it: and the defendant's witness and overseer, proves that defendant "visited his plantation occasionally while the gin and improvements were going on," though he never went to see where his slaves and overseers were getting the timber.

All the testimony concurs, that so far as Davis was active in the trespass, he acted as the overseer of defendant, using his teams and slaves in the ordinary course of his business, in building his employer's gin, quarters, &c.

But the testimony chiefly shows the trespass to have been by the slaves and teams of the defendant, though Davis was frequently with them. Therefore all the argument that this was Davis's trespass is gratuitous, and all the proof concurs that there was some trespass on the plaintiffs' land, committed by defendant's overseer and slaves, for use of defendant, and as defendant's witness asserts, unintentionally.

But in the extent of the trespass the proof is very contradictory, and the jury have settled these contradictions in the plaintiffs' favor, and hence the court should not interfere, and particularly in case of tort. 10 Johns. Rep. 443.

As then a trespass in some extent, (and for which the defendant even on the common law rule is unquestionably liable,) has been proved, and the jury twice determined its extent, why should this court now order another trial?

In a case of two verdicts upon doubtful testimony, why should this court indulge its doubts upon the same testimony, and exhaust its powers in granting a new trial, to refer doubtful evidence a third time to a jury?

The record shows the appeal to have been prayed for and granted, from the decision of the court in overruling a motion for a new trial, and from the "verdict of the jury." The statute allows no such appeal. Rev. Code, 138; sect. 148, 150, 151; Ibid. 148; last clause of sect. 5.

"That no appeal shall be granted, &c., till final judgment," &c.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

This action of trespass *quare clausum fregit* was instituted in the circuit court of Wilkinson county, by the defendants in error against the plaintiff in error, for a trespass committed by the slaves of plaintiff under the direction of an overseer, in cutting and carrying off timber from the school lands. The grounds on which a reversal of the judgment of the circuit court is sought, are placed upon the record by bills of exceptions, the first of which was

[Carmichael, Appellant, *v.* Trustees of School Lands.]

taken to the opinion of the court in admitting as evidence a plat or diagram of the land on which the trespass was alleged to have been committed, with the certificate of George Dougherty, the surveyor, annexed thereto.

The materiality of this instrument of evidence is not readily perceived, as it was not explained to the jury; and the witnesses who testified in the case established, without it, the commission of a trespass on the school land. It was doubtless introduced to establish boundary, but no question of that kind arose in the trial. was, however, permitted to go to the jury, and was deemed worthy of a place in a bill of exceptions, and is made a point in the argument, and as we cannot know what influence it had in the cause, its admissibility will be briefly noticed.

Admitting that the plat was truly and correctly made, it is in no way connected with this case: at least it does not show any such connection on its face, nor is its applicability made to appear by other evidence.

Dougherty certifies that the plat "represents fractional township No. 1 in range west, in the land district west of Pearl River," but whether the representation is known by actual survey does not appear, and if it was, it could give no importance to it as a matter of evidence. The survey does not appear either from the certificate or any thing in the record to have been taken by order of the court, or according to the provisions of the statute for establishing boundary. Nor do we know that it was an official act performed by Mr. Dougherty in the discharge of a duty required by law, and, therefore, entitled to credit.

He might have been a witness and used the diagram in explanation, but in no other way could it be proper testimony. The survey, if made, was a mere private one, and Mr. Dougherty's certificate was no better than it would be to establish any other fact to which he was competent to testify as a witness.

It was urged in argument, that it does not appear that the survey and certificate in the bill of exceptions are the same that was used on the trial. Finding them as we do in the bill of exceptions contained in the record, we must infer that they are the same, although proper words of designation or identity be wanting.

Only one other point made in the argument at bar will be

[Carmichael, Appellant, *v.* Trustees of School Lands.]

noticed. The plaintiffs below sued as " trustees of the school section in township No. 1, range 4, west, and by virtue of their offices aforesaid, and by the statute in this and like cases specially provided, having charge and possession of the school lands in fractional township No. 1, range 5, west of the basis meridian;" and for the defendants below it was insisted, that they should prove the character or capacity in which they sued, under the general issue pleaded.

To this it was answered, and the court so decided, that the plea of the general issue admitted the character in which the plaintiffs sued. In this the court erred. The general issue is a denial of all the material allegations in the declaration, and puts the plaintiff on proof of every thing necessary to maintain his action. Was the character in which the plaintiffs below sued essential to their right of recovery? It was only in virtue of that character that they had a right of action; individually they had no such right. The possession of the land and the control over it, was vested in the trustees, and unless they could attach to themselves the character of trustees, they had no power over it whatever. They assumed to sue in an artificial character, to which was attached by law a right of action, and which might or might not be true in point of fact, and which, if untrue, deprived them of their right of recovery; it was therefore necessary, that by proof they should sustain the allegation in the declaration. It was not an immaterial averment, but a material one, and therefore denied, or at least not admitted, by the general issue.

Authorities are abundant in support of this position. The trustees of school lands, although not incorporated by a particular name, are nevertheless *quasi* corporations, and fall within the rule established by adjudicated cases, in regard to corporations. By the first authority cited at bar by the plaintiffs' counsel, 8 Johns. Rep. 378, the rule is laid down without qualification, that when a corporation sues, they must prove their corporate capacity, and this was the only point raised in the case. In support of the position, several English authorities are cited by the court, and the reporter in a note has added several American authorities. The same point is decided in 14 Johns. Rep. 415. The decision of the court in the case cited by counsel for defendants in error, from 15

[Carmichael, Appellant, *v.* Trustees of School Lands.]

Johns. Rep. 208, is in opposition to the authorities before cited. The decision, however, seems to be in part founded on the admission of counsel in the court below. Opposed to this decision, and in support of those first cited, there are several subsequent decisions made by the same court. The question was again directly decided in the case of The Trustees of Vernon *v.* Hills, reported in 6 Cowen, 28, that when a corporation sues, they must prove under the general issue, that they are a corporation.

The last case we find in the New York Reports, is in Williams *v.* The Bank of Michigan, 7 Wendell, 539; which was decided in the court for the correction of errors, where every point doubtless received the most profound consideration.

The chancellor commenced his opinion by saying, " There is no doubt that, by the common law of England, and the settled law of this state, if a suit is brought by a corporation, they must, on the general issue pleaded, show that they are a corporation." In support of this position, the chancellor cited numerous authorities, both English and American, which shows that the point was well considered, and decided, not as a rule peculiar to New York, but as having its origin in the common law. It is further settled, that even contracting with them by a corporate name, does not supersede the necessity of such proof. An additional authority will be found in Angell and Ames on Corporations, 377, where the same rule is laid down in terms equally broad and unequivocal, and sustained by reference to many adjudicated cases, both in England and in this country. These numerous authorities place the rule beyond question in regard to corporations, and I can perceive nothing which will exempt the defendants in error from its operation. It is true they have never been incorporated by a particular name, and in that name authorised to sue and be sued; but, like all other corporations, they possess only such powers as are given them by law, with succession. They were admitted in argument to be a *quasi* corporation, and so they are classed by law writers, as will be seen by reference to the work last cited, p. 16. Being regarded in all respects as corporations, they must be subject to the same rules.

Why is it that a corporation must prove its authority, or character in which it sues? Not because the cause of action depends on that

[Carmichael, Appellant, *v.* Trustees of School Lands.]

character, but because the remedy depends upon it, and can only be enforced by persons·competent to sue.    In the case before us, the cause of action accrued by the commission of the trespass, but to whom did it accrue?    To the trustees; but it only accrued to them in virtue of their fiduciary or trust character, and in order to sustain it, that character must be proved.    It was insisted in argument, that if the defendant below did not mean to admit the plaintiffs' right to sue, he should have pleaded in abatement; but certainly there is no need of making the denial by plea in abatement.    If the defendant had denied by plea that they were trustees, it would have been in bar and not in abatement, because, without the character which they assumed they had no right of action.    Such a plea would be equivalent to the plea of *nul tiel* corporation, which is now considered to be bad, because it amounts to the general issue, being a denial of what the plaintiff on the general issue would be bound to prove, and as such, would have been demurrable.

Although the counsel for the plaintiff requested the opinion of the court on all the points raised in·argument, we forbear·giving it, as those already noticed are sufficient to reverse the judgment, and it only remains to notice one question made by the counsel for the appellees.    It was insisted, that the appeal was irregular, and should be dismissed, because the party had twenty days from the adjournment of court, to enter into bond.    The record does not clearly show whether the bond was executed in term time or vacation.    By reference to dates, it is presumable that it was in term time.    On the 22d day of November, the court overruled the motion for a new trial, from which decision, the appeal was prayed and granted, and on the 24th, only two days afterwards, the bond was executed, with the surety approved by the court, and it appears in the record as a part of the proceedings of the court. Even if it was improper for the court to give twenty days after the adjournment to execute the bond, if the party came forward and complied with the law by executing it in term time, his appeal must be sustained.

Let the judgment be reversed, the cause remanded, and a *venire de novo* awarded.